**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**FRANKLIN GRIMES,**
*For himself and on behalf of all*
*similarly situated individuals,*
       **Plaintiff,**

**v.**             **CASE NO. 3:08cv492**

**ADVANCED CALL CENTER**
**TECHNOLOGY, LLC,**

      **Defendant.**

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

  COMES NOW the Plaintiff, Franklin Grimes, by counsel, and for his Memorandum in

Opposition to Defendant's Motion to Dismiss, he states as follows:

**INTRODUCTION**

  Defendant asks this Court to find that the FACTA amendments to the Federal Fair Credit

Reporting Act (FCRA), 15 U.S.C. §1681, et seq. – hailed by Congress as a consumer victory –

actually intended to repeal important rights otherwise available in this remedial statute since its

enactment in 1970.   In so doing, Defendant asks this Court to take a position at odds with

contrary conclusions reached by Judges Lauck, Dohnal and Spencer – the only three to consider

this issue in the Fourth Circuit.  Defendant's single argument is, "You should rule contrary to

Virginia's judges because more judges outside the state have concluded differently."  This

*argumentum ad populum* is fallacious and cannot stand in the face of better reason.

**ARGUMENT**

I.      **DEFENDANT'S MOTION REGARDING THE FCRA SHOULD BE DENIED BECAUSE CONGRESS DID NOT REPEAL THE PRIVATE CAUSE OF ACTION FOR EVERY CLAIM IN 15 U.S.C. § 1681m.**

Plaintiff has filed suit under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), alleging that the Defendant obtained and used the Plaintiff's consumer credit report to render an adverse action, and then failed to provide the consumer the written notice required by the FCRA.  Pursuant to 15 U.S.C. § 1681m(a), a user of a consumer report who takes an adverse action with respect to a consumer must provide a notice about the use of the credit report.  The term "adverse action" includes, among many other events, the same events given in 15 U.S.C. § 1691(d)(6) of the Equal Credit Opportunity Act.  This notice must be provided when the action "is based in whole or in part on any information in a consumer report." 15 U.S.C. § 1681m(a). As Congress long ago cautioned at 15 U.S.C. § 1681(a)(1), our "banking system is dependent on fair and accurate credit reporting."  The FCRA's adverse action notice requirement serves an important function - enabling a consumer to obtain a consumer report used to deny credit, insurance or employment and start the process of correcting inaccuracies in same.  It is this process that Congress determined would best assure the accuracy of the decisions in these systems.

The simplest description of the argument addressed in the present motion is this -  FCRA 15 U.S.C. § 1681m existed before the 2003 FACTA amendments with seven sub-letters (a) – (g). Congress added a new sub-part, lettered (h) that became 15 U.S.C. §1681m(h) that added specific new requirements on lenders when they used credit scores to make a credit decision that priced the eligibility higher because of a credit score.   A specific new disclosure was required.

The amendment was made in a FACTA bill that was named "Section 311".   But the new disclosure obligation was negotiated to be without a private cause of action.   So in that sub-part, the FACTA bill stated that this "section" will be without a private cause of action.   Defendant argues that the effect of this new sub-part language is to render the other seven sub-parts, (a) through (g) of 15 U.S.C. §1681m as now without a private cause of action.   Plaintiff argues that this interpretation, while superficially tempting on its face, would repeal a right without any legislative history supporting such a repeal and render numerous other provisions of the FCRA that use the word "section" in the same manner internally illogical and contradictory.

Over the developing history of this requirement and Sections 1681m(a) and (b), a debate had raged over whether or not a creditor was required to provide an adverse action notice if the credit or insurance was still approved, though at less favorable terms.   The consumer side contended the law did require such notice; the defense side argued otherwise.   Congress amended the FCRA in 2003 and made a number of improvements to add additional rights for identity theft victims and to improve the consumer's rights against furnishers of information to the consumer reporting agencies.  (e.g. 15 U.S.C. § 1681s-2).   However, it also resolved the debate regarding "risk-based pricing" and required adverse action notices even when an alternate form of credit or insurance was still approved.   This change was made by adding a section of FACTA, Section 311, and codifying it at FCRA Section 1681m(h).

Defendant's argument is actually much simpler than that addressed herein.   Defendant does not attempt to explain the underlying questions facing the Court and instead argues only that this Court should abandon the Fourth Circuit and Virginia line stated in detail in *Barnette* and rely instead on the line of cases that began with one attorney in Illinois and led to – in his name

alone – no less than sixteen repeated opinions in his Illinois, Indiana and Seventh Circuit docket.[1]

However, it is – candidly – just as improper for present Plaintiff to argue that the Court should

reject the Defendant's argument merely because the issues considered were litigated in weak

fashion or in a particularly hostile venue as it is for Defendant to have offered as its single

argument for reversing the law in this District the fact that mathematically more opinions have

found as it asserts than have found as Judges Lauck, Dohnal and Spencer concluded.  There are

actually complex and substantive arguments both in support of and in opposition to Defendant's

conclusion.  The Plaintiff addresses these fully in this memorandum so that the Court may avoid

the "knee-jerk" reaction which could be caused by a shallow read of the N.D. Illinois and Indiana

cases that led to *Perry*.

Defendant argues that Congress repealed the private right of action as to all of § 1681m

when it enacted the Fair and Accurate Credit Transactions Act of 2003, P.L. 108-159

("FACTA"), which amended the FCRA and took effect December 1, 2004.   Defendant claims

that in the course of ***strengthening*** the FCRA by passing FACTA, Congress ***eliminated*** the

existing private rights of action in the FCRA for violations of 15 U.S.C. § 1681m.  The argument

is that Congress did this when it adopted a new section, 15 U.S.C. § 1681m(h), and included the

following language as § 1681m(h)(8):

**(8) Enforcement.**

---

[1]     Over the many years of Plaintiff's counsels' litigation experience, each has rarely attacked a decision or opinion by reference solely to the Court that issued it.  However, as Judge Dohnal has hopefully discovered in his consideration of other FCRA cases from this district, the Northern District of Illinois has become and may truthfully be characterized as the District most overtly hostile to consumer cases, particularly FCRA claims.   A string cite of examples would be seemingly endless.  The origin of this may be the nature of the consumer practices of two particular "mill" law firms – one that started the flood of repeated losses in Illinois and Indiana - that file a high volume of cases in that Court.  However, Plaintiff does not ask that the Court ignore the <u>Perry</u> case or any others merely because of where they were from or because of the manner

**(A) No civil actions. Sections 616 and 617 [15 USC §§1681n and 1681o]shall not apply to any failure by any person to comply with this section.**

**(B) Administrative enforcement. This section shall be enforced exclusively under section 621 [15 USC §1681s] by the Federal agencies and officials identified in that section.**

___This language was added by Section 311(a) of FACTA___, the full text of which is as follows:

### SEC. 311. RISK-BASED PRICING NOTICE.

**(a) Duties of Users. Section 615 of the Fair Credit Reporting Act (15 U.S.C. 1681m), as amended by this Act, is amended by adding at the end the following:**

**(h) Duties of Users in Certain Credit Transactions.**

**(1) In general. Subject to rules prescribed as provided in paragraph(6), if any person uses a consumer report in connection with an application for, or a grant, extension, or other provision of, credit on material terms that are materially less favorable than the most favorable terms available to a substantial proportion of consumers from or through that person, based in whole or in part on a consumer report, the person shall provide an oral, written, or electronic notice to the consumer in the form and manner required by regulations prescribed in accordance with this subsection.**

**(2) Timing. The notice required under paragraph (1) may be provided at the time of an application for, or a grant, extension, or other provision of, credit or the time of communication of an approval of an application for, or grant, extension, or other provision of, credit, except as provided in the regulations prescribed under paragraph (6).**

**(3) Exceptions. No notice shall be required from a person under this subsection if**

**(A) the consumer applied for specific material terms and was granted those terms, unless those terms were initially specified by the person after the transaction was initiated by the consumer and after the person obtained a consumer report; or**

**(B) the person has provided or will provide a notice to the consumer under subsection (a) in connection with the transaction.**

---

in which the consumer argument was litigated by their Illinois/Indiana Plaintiffs' counsel, but rather that it understand its context and thus provide a fair hearing to the legal arguments made separately herein.

**(4) Other notice not sufficient. A person that is required to provide a notice under subsection (a) cannot meet that requirement by providing a notice under this subsection.**

**(5) Content and delivery of notice. A notice under this subsection shall, at a minimum**

**(A) include a statement informing the consumer that the terms offered to the consumer are set based on information from a consumer report;**

**(B) identify the consumer reporting agency furnishing the report;**

**(C) include a statement informing the consumer that the consumer may obtain a copy of a consumer report from that consumer reporting agency without charge; and**

**(D) include the contact information specified by that consumer reporting agency for obtaining such consumer reports (including a toll-free telephone number established by the agency in the case of a consumer reporting agency described in section 603(p)).**

**(6) Rulemaking.**

**(A) Rules required. The Commission and the Board shall jointly prescribe rules.**
**(B) Content. Rules required by subparagraph (A) shall address, but are not limited to (i) the form, content, time, and manner of delivery of any notice under this subsection;**
**(ii) clarification of the meaning of terms used in this subsection, including what credit terms are material, and when credit terms are materially less favorable;**
**(iii) exceptions to the notice requirement under this subsection for classes of persons or transactions regarding which the agencies determine that notice would not significantly benefit consumers;**
**(iv) a model notice that may be used to comply with this subsection;**

**and**

> **(v) the timing of the notice required under paragraph(1), including the circumstances under which the notice must be provided after the terms offered to the consumer were set based on information from a consumer report.**
> **(7) Compliance. A person shall not be liable for failure to perform the duties required by this section if, at the time of the failure, the person maintained reasonable policies and procedures to comply with this section.**
> **(8) Enforcement.**
> **(A) No civil actions. Sections 616 and 617 shall not apply to any failure by any person to comply with this section.**
> **(B) Administrative enforcement. This section shall be enforced exclusively under section 621 by the Federal agencies and officials identified in that section.**
>
> **(b) Relation to State Laws. Section 625(b)(1) of the Fair Credit Reporting Act (15 U.S.C. 1681t(b)(1)), as so designated by section 214 of this Act, is amended by adding at the end the following:**
>
> > **(I) section 615(h), relating to the duties of users of consumer reports to provide notice with respect to terms in certain credit transactions.**

The version of FACTA first passed by the House of Representatives did not include § 311. The House's bill only envisioned that the FTC prepare a model summary of rights for consumers who believe that they may be the victims of fraud or identity theft.  The FTC also would be responsible for developing procedures and forms to be used by consumers to report identity theft to creditors and credit reporting agencies and for conducting various studies on such topics as the accuracy of information contained in credit reports and the impact of credit scores and credit-based insurance scores on the availability and affordability of financial products. Congressional Budget Office Cost Estimate, Fair and Accurate Credit Transactions Act, H.R. 2622, 103rd Cong. Sep. 3, 2003, available at http://www.cbo.gov/ftpdocs/45xx /doc4546/ hr2622.pdf.

On November 21, 2003, § 1681m(h) first appeared in the Congressional Record.

On that same day Representative Oxley submitted a "section-by-section analysis on behalf

of myself and the gentleman from Alabama (Mr. Bachus), the Chairman of the Financial

Institutions and Consumer Credit Subcommittee, who introduced H.R. 2662 and presided

over a series of hearings over the past year that laid the groundwork for this landmark

legislation."  149 Cong. Rec. E2512 (Dec. 8, 2003)(statement of Rep. Oxley). In analyzing

FACTA § 311, Rep. Oxley stated:

> Section 311. Risk-based pricing notice ***This section*** establishes a new notice
> requirement for creditors that use consumer report information in connection with a
> risk-based credit underwriting process for new credit customers. If a creditor grants
> credit to a new credit customer "on material terms that are materially less favorable
> than the most favorable terms available to a substantial proportion of [the creditor's
> other new] consumers" based on information from a consumer report, the creditor
> must give the consumer a notice stating that the terms offered to the consumer are
> based on information from a consumer report. Nothing in the section, however,
> precludes a creditor from providing such a notice to all of its new credit customers,
> such as in a loan approval letter or other communication that the credit has been
> granted. Such a notice is not required, however, if the consumer applied for specific
> material terms and was granted those terms and those terms are not changed after
> the consumer responds to the credit offer. Also, such a notice is not required if the
> person has provided or will provide an adverse action notice pursuant to section
> 615(a) of the FCRA in connection with an application that is declined. In addition,
> the creditor is provided with flexibility in the timing of providing such notice,
> which can be given to the consumer at the time of application for credit or, at
> communication of loan approval, except where the regulations issued under ***this***
> ***section*** specifically require otherwise.
> The notice is intended to be a concise notice that includes: a statement that the
> terms offered are based on information from a consumer report; the name of a
> consumer reporting agency used by the creditor; a statement that the consumer
> may receive a free consumer report from that consumer reporting agency; and the
> consumer reporting agency's contact information for obtaining a free credit report.
> The creditor is not required to tell the consumer that it has taken or may take any
> unfavorable action, only that it used or will use credit reporting information in the
> underwriting process.
> The FTC and FRB are directed to jointly prescribe rules to carry out ***this section***.
> The rules are to address the form, content, time and manner of delivery of the
> notice; the meaning of the terms used in the section; exceptions to the notice
> requirement; and a model notice. ***The section*** provides creditors with a safe

harbor if they maintain reasonable policies and procedures for compliance, and *the section* is only subject to administrative enforcement by the appropriate Federal agencies.
*This section* also adds a national uniformity provision prohibiting any State from imposing a requirement or prohibition relating to the duties of users of consumer reports to provide notice with respect to certain credit transactions. (Id. at E2516). (emphasis added).

The Court will note that "the section" and "this section" is being used to refer to FACTA § 311, which is 15 U.S.C. § 1681m(h), not all of § 1681m. Section 1681m(h)(8) was intended to apply only to the newly added provisions under § 1681m(h) and not § 1681m in its entirety.  Defendant contends that it applies to all of § 1681m, thus abrogating the existing private rights of action in §§ 1681m(a)(d).

## A. *BARNETTE, JEFFERSON* AND *JOHNSON* WERE CORRECTLY DECIDED.

The first Virginia case to consider the issues raised herein was *Barnette v. Brook Road, Inc.*, 429 F.Supp.2d 741(E.D.Va. 2006).  Magistrate Judge Lauck, sitting by consent of the parties, considered significant briefing and argument before rendering what can be objectively characterized as the most comprehensive opinion written on the dispute.  The decision was shortly cited favorably to reject the present argument by Judge Dohnal in *Jefferson v. Briner Inc.*, 2006 WL 1720692, note 8 (E.D.Va. 2006).  More recently, after entertaining the same Motion to Dismiss in *Johnson v. Taylor Kia*, 3:06-cv-00600 (E.D. Va. 2007), Judge Spencer ruled from the Bench denying the same motion for the same reasons as *Barnette*, with entry by formal Order dated January 26, 2007.

While Barnette is comprehensive, and addresses most of the arguments made hereafter, the most dispositive is that addressing another FACTA section amending the FCRA that was adopted at the same time as FACTA Section 311 – the one causing the present confusion.

FACTA Section 311 added a new right – for risk-based pricing notices, but sought to preclude that new right from a private cause of action.   But FACTA Section 312 actually amended the private cause of action provisions in the FCRA.  It stated:

> <u>Nothing in this section, the amendments made by this section</u> [amending 15 U.S.C.A. §§ 1681s and 1681s-2 and enacting this note], or any other provision of this Act [FACTA, which included the present 1681m amendment]   <u>shall be construed to affect any liability under section 616 or 617 of the Fair Credit Reporting Act</u> (15 U.S.C. §§1681n, 1681o) that existed on the day before the date of enactment of this Act [Dec. 4, 2003]. (Emphasis added).

That is – if the Court adopts Defendant's interpretation of FACTA Section 311 – reading the reference in 1681m(h)(8) to apply to all of 1681m, instead of simply the FACTA Section 311 that became 1681m(h), then it would have to ignore FACTA Section 312, which expressly stated that Congress was not, by FACTA, affecting any private cause of action already available on the date of the enactment.  As the Court explained:

> The "liability" left unaffected by FACTA's amendments explicitly includes that created by the enforcement of FCRA's requirements through a private right of action. Thus, § 312(f) dictates that private individuals may still enforce the requirements of § 1681m that antedated FACTA. This directly contravenes Defendant's reading of the word "section" in § 1681m(h)(8) to include all of § 1681m, thereby eliminating a private right of action under §§ 1681n and 1681o for violations of § 1681m. Interpreting § 1681m(h)(8) to apply only to subsection (h), however, would resolve this conflict because subsection (h) established new rights that did not exist before enactment of FACTA and, thus, does not fall within the ambit of § 312(f).

*Barnette v. Brook Road, Inc.*, 429 F.Supp.2d at 747-748.

## B.    "SECTION" IS AN AMBIGUOUS WORD

"Section" is inherently ambiguous.  In "codes, statutes, and other jurisdictional writings, the smallest distinct and numbered subdivisions are commonly called 'sections' sometimes 'articles,' and occasionally 'paragraphs.'" BLACKS LAW DICTIONARY 1353 (6th ed. 1990).

In a recent (and infamous) case, the late Chief Justice Rehnquist delivered the opinion of the Court that described 18 U.S.C. §§ 1512(b)(2)(A) and (B) as "These sections." *Arthur Andersen, LLP v. United States*, ____ U.S. ____; 125 S. Ct. 2129, 2131; 161 L. Ed. 2d 1008, 1013 (2005). Just as 18 U.S.C. §§ 1512(b)(2)(A) and (B), can be called "sections" so can 15 U.S.C. § 1681m(h) also be labeled a "section."  This is particularly true where, as here, § 1681m(h) was a discrete "section" – section 311 – of FACTA.

In a statutory construction exercise similar to the one presented to this Court, the Supreme Court recently addressed Congress' ambiguity in drafting the 1986 amendments to the False Claims Act ("FCA").  *Graham County Soil & Water Conservation Dist. v. U. S.*, ____ U.S. ____; 125 S. Ct. 2444; 162 L. Ed. 2d 390 (2005). Section 3730(h) of the FCA created a new private cause of action for employees who were retaliated against for assisting in an investigation of prosecution of a FCA claim. *Id.* at 2247. Section 3731(b) of the FCA was also amended providing that "***a civil action under section 3730 may not be brought*** – (1) more than 6 years after the date on which the violation of section 3729 is committed." Id. (quoting 31 U.S.C. § 3171(b) and (b)(1)) [Emphasis supplied].

In *Graham County*, the Supreme Court granted certiorari to resolve an ongoing disagreement between the appellate courts whether the 31 U.S.C. § 3731(b)(1) statute of limitations applied to claims brought under § 3730(h).  The Court noted that anomalies within the statute showed at a minimum "that § 3731(b) is ambiguous about whether 'action under section 3730' means all actions under § 3730, or only under §§ 3730 (a) and (b) actions." *Graham County*, 125 S. Ct. at 2449. The Court ultimately held that the § 3731(b)(1) statute of limitations did ***not*** apply to claims brought under § 3730(h). Id. at 2453.

Some of the adverse opinions in part relied upon the "meaning" of "section" in Congressional drafting manuals, which establish a hierarchy under which "section" take precedence over "subsections" and so forth.  However, as demonstrated by *Graham County*, those manuals are not always followed.  In this case, there is ample evidence that they were not followed, and that "section" in 15 U.S.C. § 1681m(h)(8)(B) only means § 1681m(h), or § 311 of FACTA, and not all of § 1681m: **(1)** The same hierarchy requires a provision intended to modify to all of § 1681m to be designated as a subsection, here § 1681m(i), not § 1681m(h)(8).  The designation § 1681m(h)(8) indicates that the provision modifies the next highest subdivision, § 1681m(h), and not all of § 1681m. **(2)** Applying § 1681m(h)(8) to all of § 1681m creates multiple redundancies and inconsistencies. **(3)** The only evidence of legislative intent is that § 1681m(h)(8) modifies only § 1681m(h). The purpose of FACTA was to expand consumer protection, not effect a radical reduction in consumer protection. Therefore, the Court should hold that § 1681m(h)(8) only applies to the newly added § 1681m(h) and not all of § 1681m.

## C.   THE LOCATION OF THE LANGUAGE SHOWS IT ONLY APPLIES TO § 1681m(h).

Statutory text must be examined in light of "context, structure, and related statutory provisions," *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, _____ U.S. _____; 125 S. Ct. 2611, 2620; 162 L. Ed. 2d 502 (2005). The placement of language in a statute can affect meaning as much as the words used.  *Bailey v. U.S.*, 516 U.S. 137, 145 (1995). Courts have held that the physical location of words in a statute can make it ambiguous, by creating uncertainty as to what other words were intended to be modified or affected.  *Hecla Mining Co. v. U. S.*, 909 F.2d 1371 (10th Cir. 1990).  One cannot tell from the text whether **(1)** § 1681m(h)(8) was meant to apply to

§ 1681m(h) only and uses "section" incorrectly or **(2)** § 1681m(h)(8) was meant to apply to all of § 1681m and was designated incorrectly.  While Congress is presumed to be familiar with the drafting manuals that define  "section" and "subsection," it is also presumed to know that a provision intended to modify all of §1681m and not just §1681m(h) should be designated as §1681m(i), not §1681m(h)(8).  Thus there are two flatly inconsistent statements, one through use of "section" and the other through the designation of the language in question as subordinate to §1681m(h).  The only thing "clear" about § 1681m is that there is a "scrivener's error" of *some* sort, and the inability to discern from the text which of two meanings was intended is an "ambiguity."

> **D.     READING § 1681m(h)(8) AS BARRING ALL ACTIONS UNDER § 1681m CREATES MULTIPLE INCONSISTENCIES AND REDUNDANCIES.**

If "section" in 15 U.S.C. § 1681m(h) means all of § 1681m, §§ 1681m(h)(7) and 1681m(c) are superfluous and redundant.  Both of these create a "reasonable procedures" defense. Unless the defense in § 1681m(h)(7) is confined to § 1681m(h) and that in § 1681m(c) to the pre-FACTA portions of § 1681m, they are duplicative.  Statutes are not construed so that material portions are superfluous and serve no apparent function. "A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Hibbs v. Winn*, 542 U.S. 88, 124 S. Ct. 2276, 2286, 159 L. Ed. 2d 172, 178 (2004).  "We must read a statute to give effect to each word so as to avoid rendering any words meaningless, redundant, or superfluous."  *Witzke v. Femal*, 376 F.3d 744, 753 (7th Cir. 2004).  This also shows that 15 U.S.C. § 1681m was the subject of poor and hasty statutory drafting, requiring the Court to determine what was actually meant by "section."  The fact that there is *no*

reading of § 1681m that does not result in serious anomalies refutes the conclusion that its

meaning is "clear."

A second redundancy is created by 15 U.S.C. § 1681s-2(c), one of the FCRA provisions

amended by FACTA.  Section 1681s-2(c) expressly provides that the private remedies

sections, 15 U.S.C. §§ 1681n and 1681o, do not apply to *one portion* of § 1681m, namely 15

U.S.C. § 1681m(e), the provision dealing with "red flagging" of reports affected by identity

theft:

> **(c) Limitation on liability. Except as provided in section 621(c)(1)(B) [15 U.S.C. § 1681s(c)(1)(B)], sections 616 and 617 [15 U.S.C. §§ 1681n, 1681o] donot apply to any violation of—**
> **(1) subsection (a) of this section, including any regulations issued thereunder;**
> **(2) subsection (e) of this section, except that nothing in this paragraph shall limit, expand, or otherwise affect liability under section 616 or617 [15 USC § 1681n or 1681o], as applicable, for violations of subsection (b) of this section; or**
> **(3) subsection (e) of section 615 [15 U.S.C. § 1681m].**
>
> **(d) Limitation on enforcement. The provisions of law described in paragraphs (1) through (3) of subsection (c) (other than with respect to the exception described in paragraph (2) of subsection (c)) shall be enforced exclusively as provided under section 621 [15 U.S.C. § 1681s] by the Federal agencies and officials and the State officials identified in section 621 [15 U.S.C. § 1681s].**

Congress would not amend 15 U.S.C. § 1681s-2(c) to exempt § 1681m(e) from private

remedies if all of § 1681m were *already* exempt from private remedies by virtue of §

1681m(h)(8).  This indicates that the reference to "section" in § 1681m(h)(8) is to § 1681m(h),

only. Thus, there are no private remedies for the two portions of § 1681m added by FACTA  – §§

1681m(h) and 1681m(e)  – but existing private remedies for the prior portions of § 1681m – §§

1681m(a)-(d)  – continue.

14

### E. THE ACTUAL LEGISLATIVE INTENT OF FACTA § 311 REFUTES DEFENDANT'S ARGUMENT OF "REPEAL."

All of the available legislative history shows that the limitation to administrative

remedies in § 1681m(h)(8) applies to the new risk-based pricing notice obligation. In his

section-by-section analysis of the bill, Representative Oxley provided a detailed description of

FACTA § 311, without referring to the elimination of existing private rights of action.  149

Cong. Rec. E2512, 2516 (Dec. 8, 2003)(statement of Rep. Oxley).  The only reference to

enforcement by federal agencies is as follows:

> The FTC and FRB are directed to jointly prescribe rules to carry out this section.
> The rules are to address the form, content, time and manner of delivery of the
> notice; the meaning of the terms used in the section; exceptions to the notice
> requirement; and a model notice. The section provides creditors with a safe
> harbor if they maintain reasonable policies and procedures for compliance, and
> the section is only subject to administrative enforcement by the appropriate
> Federal agencies.
> This section also adds a national uniformity provision prohibiting any State from
> imposing a requirement or prohibition relating to the duties of users of consumer
> reports to provide notice with respect to certain credit transactions.

*Id.*

This Court should note that (a) Rep. Oxley is using "section" to refer to FACTA § 311,

and (b) the last two paragraphs of his analysis state the rulemaking authority of the FTC and the

Federal Reserve Board (FACTA § 311(a)(6)), the "safe harbor" provision (FACTA § 311(a)(7)),

and the provision relating to state law (FACTA § 311(b)), and completely skipped over the

provision which, supposedly, prohibits all lawsuits based on alleged violations of 15 U.S.C. §

1681m.  It is unimaginable that a sweeping change in the law would receive no mention in the

analysis performed by Rep. Oxley—unless no such change was in the law to begin with.

Similarly, Representative Moore's listing of the changes to the law made by FACTA does

not include any statement of the elimination of private actions.  103 Cong. Rec. E2492-94 (Nov.

21, 2003)(statement of Rep. Moore).  He addressed FACTA § 311, his concerns about that section, and noted that agencies are charged with rule making responsibilities, but he did not mention a bar on the private right of action:

> Recognizing the challenges associated with implementing a risk based pricing notice in the mortgage context, I urge the regulatory agencies charged with rulemaking under this Section to report back to the Congress with recommendations for how to make the triggering, timing and content of the risk based pricing notices work in mortgage transactions without exposing lenders to undue compliance and litigation risks. These are issues that—if not addressed through the rulemaking—will need to be reexamined by Congress. 013 Cong. Rec. E2494 (Nov. 21, 2003)(statement of Rep. Moore), attached hereto as Exhibit G. See also 12 C.F.R. § 222.1(c) and 16 C.F.R. § 602.1(c)(FTC / Federal Reserve Board regulations regarding effective dates say nothing about any change other than risk based pricing notice).

There is no indication that the purposes of the change to § 1681m included doing away with existing substantive rights that have long been privately enforceable. This is not because §1681m(h)(8) was not the subject of discussion.  There are repeated references to the fact that the effect of §1681m(h)(8) is that the new risk-based pricing notice requirement is enforceable only by the administrative agencies, two of which are quoted above.

A private right of action clearly existed under present law to enforce the adverse action notice requirements of 15 U.S.C. §§ 1681m(a)-(b).  That provision has been the subject of numerous private actions—over 100 such cases appear in Westlaw.

Congress is presumed to legislate against the background of existing law on the subject. *Witzke v. Femal,* 376 F.3d, 744 750-51 (7th Cir. 2004). One would expect some mention in the legislative history of the abrogation of such an important right of action.  *Koons Buick Pontiac GMC, Inc. v. Nigh*, 125 S. Ct. 460 (2004), held that "there is scant indication that Congress meant to alter the meaning of [one provision] when it added [another provision].... All in all, we

16

think this is a case where common sense suggests, by analogy to Sir Arthur Conan Doyle's 'dog that didn't bark,' that an amendment having the effect petitioner ascribes to it would have been differently described by its sponsor, and not nearly as readily accepted by the floor manager of the bill." *Id*., at 468.

No such indication exists in this case. Not even those legislators who opposed the statute because it extended the existing preemption provisions, and who certainly would have mentioned the abrogation of existing rights if that were contemplated, did so.  As stated in one of the cases having to fix a similar problem in the Controlled Substance Analogue Act, "such a radical alteration would surely have occasioned some comment or remark from Congress.  The silence in this regard speaks loudly in favor of inadvertence as the explanation for the change." *United States v. Hodge*, 321 F.2d 429, 438 (3d Cir. 2003).

Contemporaneous commentators concluded that the limitation of private actions related solely to the "risk-based pricing" notice now required by § 1681m(h).  "The Act also explicitly states that the risk-based pricing notice requirements will be subject solely to administrative enforcement, and not to private rights of action."  M. McEneney and K. Kaufmann, *Fair Credit Reporting Act Developments*, 59 Bus. Lwyr. 1215 (May 2004), at n. 99. Industry commentators wrote that the private right of action for failing to provide adverse action notices was still in effect.  C. Ward, "Credit Scoring and Adverse Actions Under FACTA," 13 Nevada Lawyer 8, 33 (April 2005); J. Tuite & C. Andreason, *Privacy and Security Litigation Developments*, S&P's The Review of Banking and Financial Services, July 1, 2004, at 91. The Federal Reserve Board published a summary of FACTA that specifically discussed §1681m rights but did not mention that the private right of action had been abolished.  R. Avery et al., *Credit report accuracy and*

*access to credit*, Federal Reserve Bulletin, June 22, 2004, at 297. There is <u>no</u> pre-enactment

mention of a repeal of all private rights of action under 15 U.S.C. § 1681m, <u>anywhere</u>.

The first mention of the purported "repeal" argument was an offhand comment by a

defense lawyer in the December 12, 2003 issue of <u>American Banker</u> that Congress "perhaps

inadvertently eliminates the existing right of consumers and state officials to sue for any

violations of the adverse-action provisions of the FCRA."  M. Heller, "Regulators Scurry to

Close FACT Act Loophole," <u>American Banker</u>, Dec. 12, 2003, no. 238, vol. 168, at 3. That was

not even the "loophole" referred to in the title – the article was primarily concerned with an

apparent 35-day gap in certain provisions preempting state law (Congress had expressly stated

that the FCRA preemption provisions were being extended but there were 35 days between the

expiration of the prior preemption provisions and the effective date of the new ones), and the

"repeal" comment was thrown in to illustrate how hastily the statute had been put together.  The

gap was "fixed" by regulations issued by the FTC and Federal Reserve Board, see M. Heller,

"Fed, FTC Seek to Allow More Time on FACT Act," <u>American Banker</u>, Dec. 17, 2003, no. 241,

vol. 168, p. 10.

In effect, Defendant contends that there was a "stealth" abolition of all private claims

under § 1681m by FACTA without a word in the debates and without anyone realizing it, even

though such claims were the subject of frequent and extensive litigation and there was fairly

extensive debate concerning FACTA, and even though those specific statements that were made

about § 1681m(h)(8) omit any mention of the abrogation of existing rights of action.

Furthermore, the provision effecting this "stealth" abolition was misleadingly situated as

subordinate to § 1681m(h) rather than § 1681m.

As the Supreme Court observed in *Koons, supra*, "statutory construction is a 'holistic endeavor.' . . . A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear, <u>or because only one of the permissible meanings produces a</u> <u>substantive effect that is compatible with the rest of the law.</u>" *Koons, supra*, at 466-67 (emphasis added).  Concurring in that decision, Justice Stevens, joined by Justice Breyer, stated:

> We can, however, escape by using common sense. The history of the provision makes it perfectly clear that Congress did not intend its 1995 amendment adding (iii) to repeal the pre-existing interpretation of (i) as being limited by the ceiling contained in (ii). Thus, the Court unquestionably decides this case correctly. It has demonstrated that a busy Congress is fully capable of enacting a scrivener's error into law.

125 S.Ct. at 470 (Stevens, J., concurring).

At the very least, when a "scrivener's error" in statutory text is evident, the obligation of the Court is to correct it. *United States v. Vickery*, 199 F.Supp.2d 1363 (N.D. Ga. 2002)(Controlled Substance Analogue Act was written in an exceptionally awkward manner, leaving it unclear how many of three clauses defining the prohibited substances had to be satisfied in a particular case; court determined that Congress did not mean to cover substances which were not within chemical concept of "analogue" or to produce "unintended or absurd results," such as coverage of caffeine and alcohol, and that the correct reading was that a substance was prohibited if it satisfied Clause A + [Clause B or Clause C]; statute was so construed even though court in effect inserted "Clause A + [Clause B or Clause C]" into the text). This Court should similarly find that the bar on a private right of action is applicable only

19

to 15 U.S.C. § 1681m(h) and not to the entirety of § 1681m.

### F.    THE PURPOSE OF FACTA WAS TO EXTEND CONSUMER PROTECTIONS, NOT REDUCE THEM

The purpose of FACTA was to further "limit access to a person's consumer report," *Reynolds v. Hartford Fin. Servs. Group*, Nos. 03-35695 and 04-35279, 2005 U.S. App. LEXIS 21389, at *6 (9th Cir. Oct. 3, 2005, Amend. Oct. 24, 2005).  However, if the Illinois/Indiana law were forced into Virginia and the Fourth Circuit, consumers here would be left with the sole option of contacting the Federal Trade Commission to vindicate their rights.  It is certainly odd that an amendment to an act designed to vindicate consumer rights, would be interpreted to eliminate a significant avenue of recourse to prevent further access, a private right of action.

A more logical explanation is that FACTA included provisions from both the House and Senate versions, was hastily put together in conference (conferees were appointed on Nov. 6, 2003, 149 Cong. Rec. H10514, and the conference report was issued on Nov. 21, 2003, 149 Cong. Rec. H12198), and multiple "sections" of FACTA added "subsections" to the FCRA. Under these circumstances, it is not surprising that "section" was used other than in strict accordance with the Congressional style manuals, and in a manner inconsistent with the physical location of the provision at issue as § 1681m(h)(8) rather than § 1681m(i).

### CONCLUSION

For the reasons stated herein, the Court should not overrule *Barnette, Jefferson* and *Johnson* and should deny Defendant's Motion.

                              **FRANKLIN GRIMES,**
                              ***For himself and on behalf of all***
                              ***similarly situated individuals,***

20

_____/s/_____
Leonard A. Bennett, Esq.
VSB #37523
Attorney for Plaintiff
CONSUMER LITIGATION ASSOCIATES,
P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
lenbennett@cox.net

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of February, 2009, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

**Seth Abram Schaeffer, Esq.**
**McGuire Woods, LLP**
**One James Center**
**901 East Cary Street**
**Richmond, VA 23219**
**sschaeffer@mcguirewoods.com**

        _____/s/_____
        Leonard A. Bennett, Esq.
        VSB #37523
        Attorney for Plaintiff
        CONSUMER LITIGATION ASSOCIATES, P.C.
        12515 Warwick Boulevard, Suite 100
        Newport News, Virginia 23606
        (757) 930-3660 - Telephone
        (757) 930-3662 – Facsimile
        lenbennett@cox.net